We have six cases on the calendar this morning, two patent cases from the Patent and Trademark Office, two patent cases from District Courts, a government employee case and a veteran's case. The latter two are being submitted on the briefs and therefore will not be argued. The first case is Schott Gemtron Corporation v. SSW Holding Company, 15-1073. Mr. Schmidt. Please proceed. May it please the Court, the Board heard here by misapplying the pertinent to the problem test and by using a claim construction that was unattainable. These errors require that the Court reverse the finding regarding Angros and remand for consideration of secondary considerations in light of the correct claim construction. The Board conflated the first two prongs of the Bigeo analysis. The first prong is designed to capture that prior art that is within the field of endeavor. The second prong, however, is directed to the art itself. But Angros wasn't within the field of endeavor, was it? It was not and it was not contended that it was below. The focus of the analysis below was therefore it's not relevant prior art and the Patent Office didn't err. Absolutely not, Your Honor. With all due respect, the second prong focuses on the art itself. It charges to the knowledge of one of skill in the arts. Art that is pertinent, not necessarily solves, but is pertinent to the problem that is addressed in the patent itself. Here... The example you gave to make it pertinent was using a microscope slide as a little tiny shelf in a doll's refrigerator. That was one example. Where do you get the little tiny cans of soda to knock over a spill? Well, Your Honor, the point here is if you read Angros, Angros itself talks about dealing with spills over the side of the microscope slide. It explicitly addresses... It's about containment of intentional droplets of matter. It's about preventing migration of the liquid on the surface of the shelf, on the surface of the slide and over... Is that a spill? I'm sorry, is what a spill? The droplet of liquid that is put on the microscope slide for examination. It is our contention that under a proper construction of the term spill in the context of the patent, yes, it is. And Angros specifically refers to spills over the side when it migrates off the edge. So you think a spill in the patent should include people intentionally pouring liquids into the refrigerator? Well, that raises a problem, but yes, the way... Who do you know that intentionally pours liquids onto the refrigerator shelves? Well, when you're cleaning a refrigerator shelf, if you have a cleaning solution, you might do exactly that. You might pour it on. That would retain it, and then you would wipe it off. So yes, there are... Do you care if it goes over the edges if you're cleaning it, though? Oh, sure. Why would you care? I mean, you're going to wipe up all of the refrigerator. It doesn't matter if it spills over to the next shelf. It might save you from pouring more stuff on the next shelf. I mean, at the it has to address relevant facts, and whether the liquid is on the surface intentionally or unintentionally is irrelevant to the technology. It's irrelevant to the problem. In Angros, the high... It may be irrelevant to the technology, but it certainly is not irrelevant to the purpose of what it's doing, containing spills or containing intentional. The hydrophobic material does not know the difference, and one of skill in the art would know that. When one of skill in the art looks at Angros, they will know that it doesn't matter how it gets there. Mr. Mills was unequivocal when he said what matters is what happens after the liquid is on the shelf. That's his testimony. Spills are irrelevant. The intent behind how it gets to the surface is irrelevant, and it has to be. Your question, Your Honor, touched upon are we talking about a shelf that contains an intentional spill? If you adopt the claim construction, adopted by the board, you end up with a terrible problem with infringement because that means that the claim has to be interpreted in terms of the intent of how the liquid gets on the shelf. It raises an untenable claim construction. There would be no way to determine whether or not you're actually infringing because you can't determine how the liquid gets there. Mr. Mills testified it doesn't matter. How does Angros maximize the available space for that sample? It's a natural consequence of the technology. Because of the low profile, because hydrophobic surfaces are… Except isn't the goal of a slide to contain a small amount of liquid in a specific place? It's a smaller glass panel. It contains smaller samples. No question about that. But the claims do not have a size limitation. There's nothing in the claims that limits the claim to any particular size panel. If you read the entire patent, nowhere does it talk about size at all or size mattering. The only dimensions that are referred to are in the examples, and there it just talks about surface area because as you make the surface area larger, you can contain more liquid. As you make it smaller, you contain less liquid. But the process is the same. The structure and function of what's in Angros is identical to the structure and function of what's in the claims, and that makes it prior art under the second prong. The evidence that the board relied upon was in part directed solely to the first prong. It referred to Mr. Schechter not being familiar with or not encountering microscope slides in his everyday work. Well, that only goes to whether or not it's within the field. That does not go to whether it's pertinent to the problem. So that evidence is also, like the evidence about intent or not intent, that's all irrelevant. Mr. Mill's testimony regarding whether Angros was analogous related to unintentional releases of liquid. Everything he testifies to regarding the difference depends upon it being spill, spill interpreted to mean an unintentional release. That makes his testimony irrelevant because that claim construction is erroneous. When you look at the patent, there's nothing in the patent that limits the scope of the claims to a containment pattern that retains an unintentional release as opposed to an intentional release. The claims cover both, again because of the basic fundamental principle which is undisputed in this case and never mentioned or even acknowledged by the board. The board never considered the physics of the situation. I don't see a purchaser using this system to make Jell-O. I'm sorry, to make what? Jell-O by intentionally pouring liquid onto the shelf in order to build up a layer of gelatin dessert. There's just no logic to your argument. But because it doesn't matter whether it's intentional or not, when one skill in the art, look at Angros. Even if it doesn't matter, that's what the problem of the patent is solving is spills, which is I think properly construed to mean accidental spills. Who cares whether it matters or not? In some sense, the patent is solving a specific problem. When we look to analogous art, we look to see whether that analogous art is pertinent to the problem they're trying to solve. If the board properly determined that the problem is accidental spills, then why isn't the other reference not pertinent to accidental spills? It is pertinent to accidental spills. That's the point. Because the physics of it do not distinguish between intentional and unintentional releases, Angros is pertinent to the problem of unintentional releases because it works, the technology works on unintentional releases just the same way it works on intentional releases. Is the microscope slide designed to contain accidental spills? As I explained, yes, and Angros explicitly says that. It talks about, it doesn't use the word unintentionally, but it talks about spilling it over when you're manipulating it and how that's undesirable and how you wouldn't want to do that and how this technology prevents that, which is exactly what we're talking about. You're intentionally putting that liquid onto the slide, are you not? But after it's on the slide, the slide might be manipulated, might be knocked off. If you hit the slide, it might spill over the side. Those are all things that happen, and again, because it matters only what happens after it ends up on the surface, that's what's important, what happens when it's on the surface. And that process, that technology, acting that way as you're putting it on, and after it's on the slide, it prevents migration. Before you use up all your time, I just want to make sure that I'm clear where you are on the other procedural issues. Sure, absolutely. Do you agree that COSO makes your arguments about institution unreviewable? As long as the court adopts the position that there's no assumption. No, I mean, that's not for us to decide. I mean, if it gets raised in another court, I mean, the patent office seems to agree with you that estoppel doesn't apply, but that's for the court where you might file and assert those claims. That's not for us to decide. But you agree that the non-institution decision is unreviewable under COSO? Only if the court finds at the same time that estoppel does not apply. How can we decide that? That's issuing an advisory opinion on those claims. No, we address that in the reply brief in the Pacific Gas case and the Duke Power case. If all of the events have occurred that determine the party's rights and the question is purely a legal one, interpreting a statute, then... But none of those events have occurred because you haven't been sued on those patents and tried to get some kind of a... Sorry, whatever the estoppel thing is, that issue has not come before any court where estoppel might be relevant. But what I'm... You're asking us to issue a ruling saying if any of those patents, that there's no estoppel when that issue comes up in any other court, aren't you? All events have occurred. Once this case is final... I'm into my rebuttal, but let me just answer the question. Once the judgment in this case is final, all of the events have There's nothing else that's going to happen that's going to change the party's legal rights. And Schott-Gemtron would be severely prejudiced if we get down to the district court where the patent has been asserted and estoppel is found to apply, and we have no way then of coming to this court to get... Of course you do. You appeal from that estoppel decision. But at that point, the decision in this case will be final and unreviewable, and you will not have jurisdiction to undo the review that was improper below. But we'll have jurisdiction to review whether estoppel was properly applied, which is what you're trying to tell us to decide now for once and all. But in the Pacific Gas case, we do care. Let me ask it this way, because I want to make sure. I think the argument you're making doesn't make much sense to me, but assuming that you can get that estoppel question reviewed later, whether it's properly applied, we don't need to decide it now. No, because we cannot get full review. I respectfully would like to save the rest of my time. We will do that, Mr. Schmidt. Mr. Dilger, you're going to have ten minutes and yield five to the CTO. That's right. Thank you. May it please the Court. Many of the issues that have arisen in the presentation of Mr. Schmidt are exactly the issues that I'd like to address today. In particular, there are three issues that I'd like to address. First, the determination of whether or not dangerous is analogous art. As was suggested in the prior Q&A, that is a factual question, a factual question left to the USPTO that must only be supported by substantial evidence. Substantial evidence is not a particularly exacting standard. It is such evidence as a reasonable line might find sufficient. In this case, there's not really substantial evidence, the only evidence. Mr. Schechter didn't even say the conclusory words, Angoris is analogous art, because I think it is. He didn't say anything about it. The only testimony on this point comes from Mr. Mill, who provided detailed reasons why he found Angoris to be non-analogous art. Faced with that burden, Gemtron has seized on the construction of spill. And Mr. Schmidt, during his presentation, talked a bit about spill and the possibilities of the infringement and what the infringement issue might mean and what the claims might mean, and talked a lot about the claims. It's not the claims that matter here. The question of analogous art does not focus on the claims at all. And in fact, doing so would eliminate entirely the question of analogous art and whether you could actually reach out to other areas and fields of invention. You simply look at the solution the inventor came up with, and everything, well, there's a hydrophobic border, so all hydrophobic borders are necessary analogous. That's of course not the determination. That is not the inquiry. You look at the solution that the inventors were trying to solve. You do not look at the claims. And none of the authorities cited by Gemtron suggest otherwise. And looking at that problem, it's pretty clear the problem that was being solved here was someone coming in with their Coke can, knocking it over, someone pulling out a milk jug not knowing that the lid was on loosely, and spills flying about your refrigerator. Focusing on that inquiry, it is clear that the construction of spill has no relevance to the issue. Well, let's assume I'm wrong about that. Okay, let's assume a broader construction of spill. The problem with a broader construction of spill is there's still no evidence to suggest. Mr. Mills didn't say, well, if you construe spill broader, then I find it to be an analogous arc. Mr. Schechter, again, didn't say anything. So no matter how you construe spill, there's still no evidence to suggest that that changes the USPTO's determination that annuus is not an analogous arc. Mr. Diehl, let me ask you a question that isn't directly relevant to the question of angros and analogous arc. There's a duty of disclosure in the patent office that you're aware of to cite prior authors' materials of patentability. I see hundreds of references cited in this patent, which truly were presented by the patent office. If there are that many references material to patentability, how is this non-obvious? There are hundreds of references cited here, presumably under the duty of disclosure, which requires submission of references material to patentability. How can there be 500 plus references material to patentability and the invention be new and non-obvious? Isn't there a disconnect there? Well, none of the references teach or suggest what the inventors came up with. There's many references. I mean, one of the unfortunate side effects of the plague of inactual conduct is there is a paranoia. In other words, cite everything you can possibly find. Yes, cite what you can find because you don't want it to come back. And that's not an abuse of the process? Indeed not. I believe that looking through any of those, you'll find that all of them... Are materials of patentability? Well, no. I don't think they're materials of patentability. I think there is a... If reasonable minds can differ about it and you're a prosecution attorney, you're going to cite the art that is potentially relevant, maybe it's relevant. You'll do your best as a... I empathize with prosecution counsel. It's a difficult role they play. I know. Move on. Okay. But finally, even if one were to accept Angros as analogous art, and not addressed in comments below, even if one were to accept that Angros is analogous art, and to consider it as part of the inquiry, the board did exactly that. The board said, well, even if we do consider it Angros, even if we do consider it to be a gemtron on an alternative basis, we still find that gemtron has not met its burden. And the reason it has not met its burden is all that we get from their witness, Mr. Schechter, is conclusory hindsight. And conclusory hindsight is insufficient to bear your burden here. So even if everyone were to disagree with all that SSW has said and all that the board has reached, there's still the issue of what happens next. Do you remand to the board to consider Angros? They did. They considered it and found it wrong. So in our view, this dictates affirming the board's determination below, affirming the determination that Angros is not analogous art, and affirming the determination that Do you have any position on this topical issue? I do. First, I think it's pretty clear it's an advisory opinion that's being asked for. So if they produce something that your client thinks infringes your patent, and you sue them in district court, and they raise these grounds that they raised to the PTO, but the PTO decided not to institute on, you're not going to say they're a stop from raising those grounds, are you? If they raise the grounds that they raised... That they asked PTO to institute, but PTO did not institute on. I think that is a stop. I think raised or could have raised means exactly what it means. Well, then it isn't an advisory opinion. We have to decide whether they were properly interpreted or not. Well, first off, this is the first... So you're saying that if you come into the PTO and say, I think this patent is obvious, and here are 10 different combinations, and PTO says we're only going to institute on two, that estoppel will still apply to the other eight even though they never got a chance to argue them? I think that's consistent with both statutes... Well, that seems untenable. I mean, that means they don't have a right to get review on those obviousness grounds here, and they don't have a right to get review on these obviousness grounds in district court. Well, first off, it depends on what the grounds are that the raiser could have raised. Depends on the grounds they raised, obviously. If they raised the exact grounds that the raiser... There's only one time in which a petitioner can raise grounds, correct? You cannot raise grounds during the trial. You have to raise it in your initial petition, and it's either selected or it's not selected. So if it does not mean raised or could have raised in your petition, what does it mean? Well, in any case, if it's not selected, and it's argued below, and the court finds a stop, based on that, that's appealable. Is it not? Of course. And it seems like... I mean, you may have a legal argument, but it doesn't seem like it's one that's going to have a very good basis in the law. If they had no ability to appeal the board's denial to institute on those obviousness grounds, then those obviousness grounds were never presented to a court to review. I'm sorry. Could you repeat your question? Well, it's the same question. I mean, if they raised in their petition 10 grounds, and the board said, we're only going to look at two of those. Correct. And we say now, on direct appeal from the board's review, that we're not going to decide whether they could have or should have looked at these other eight, or whether they might have been proper grounds for rejecting the patent. If they go to district court because they get sued by you, they should have the opportunity to assert those eight grounds that weren't instituted by the board, should they not? No. And the reason why, directly contrary to me... Well, you're going to get that decided either here, now against you, or you're going to get it decided against you later. Sure. Would you rather have it decided now, when it seems like an advisory opinion, or later? Well, one, we haven't had an opportunity to even brief the issue on this one because this came up as part of a mandamus reply. I am giving my position on estoppel for the first time standing up here today. In their opening brief, Jimtron took a much different view of estoppel. In their opening brief, Jimtron suggested estoppel indeed... Why don't you just answer the question? Would you rather have it decided in this case, or when it's had a chance to be fully briefed? A hundred percent, I'd rather have it decided before the district court when I have a chance to brief it. That's your answer, then? A hundred percent. Thank you, Mr. Dilger. I think we'll hear from the patent office. Thank you. May it please the Court, please? Phil Lamarck of the CTO. Do you have a reasonable position on estoppel? Well, our position is in our brief, Your Honor. We did respond to appellants' brief where they did argue in that brief, their opening brief, that in their view estoppel did apply, and our response is no, it doesn't. And the reason that we put that argument in our brief is to clarify that when you look at the overall statutory scheme, the way we believe the statute works is that these institution decisions are non-reliable decisions, and yes, our board can make a decision to pick certain grounds and move forward on certain grounds, and not move forward on other grounds. Estoppel only applies to the grounds that they picked. That's our interpretation of the statute. That's how we see the statute, Your Honor. And that's what we've advocated in our brief. Now, to the extent whether this would be an advisory opinion or not, we understand that that issue is not the issue that's being reviewed, but we felt it was important to address that question because we're trying to interpret the statute, and that's part of the overall statutory scheme, plus an appellant asserted that as a reason why they felt we would have to review these non-selected grounds, and our response is no, we don't have to review those. We get to select which grounds we're going to move forward on. We make those the grounds as part of the IPR. That's what moves forward, and that's where Estoppel would kick in, on the grounds that were selected, the grounds that were part of the IPR. In fact, I think if you read the language of the statute— Closa would be pretty problematic if we adopted the position that Estoppel applied even to grounds not selected for review. If that were true, that Estoppel applied to the grounds that we did not select— You'd have to select everything. We'd have to select everything, and that's really, quite frankly, that's not realistic. Furthermore, it's inconsistent with the legislative history and the congressional intent behind the statute to give us discretion to make an efficient— That's why it's non-reviewable. Right, exactly. And furthermore, if Estoppel did apply, think of it this way, just from a pragmatic view, no one would ever come to the PTO and file a petition for an IPR because they'd never want to be Estoppel. So what would they do? They would just end up in district court, and they'd serve in validity there, and we would completely defeat the purpose of— I mean, the logic of the pro-Estoppel argument is they file an application or an inter partes review, and nothing is selected for review. Review is denied, then Estoppel would still apply. I mean, that's the logic of this argument. Yeah. In our view, if we denied it straight across the board, everything, there's no Estoppel on that. You could still go to district court. You could still assert those grounds. That's the way we see the statute. We think that's the only way to read it. However, we understand the court's concern over issuing an advisory opinion. We understand that. But at the same time, we felt it was important to make that argument in our brief to explain why our other aspects of the statute are correctly interpreted. And we think our position is completely consistent with Cuozzo, as well as Dominion-Dealer, and I think St. Jude and several other cases. And so, in our view, the reviewability question of our institution decision, that's already been decided by this court. We don't really think there's anything new there for the court to decide. Now, I only had four or five minutes, but were there any other questions that the court had? It seems to me, logically, that the decision not to institute is made non-reviewable by this court for that very reason. Well, we agree that it's non-reviewable, and we think it was made non-reviewable by Congress. And we think this court confirmed that reading of what Congress put there. That's been our position all along, Your Honor. If you look at the legitimacy, that's the clear intention. Yeah, in fact, we quoted a couple of pieces of that legislative history in our brief where they specifically said we want the PTO to have this discretion to potentially deny certain grounds or certain petitions because we are sensitive to the fact that they have to manage this voluminous docket. And if somebody came in with hundreds and hundreds and hundreds of grounds of unpatentability petition, you cannot possibly expect the agency to move forward on every single ground. You just can't expect that. So I don't think it would be workable if a stop will apply to the non-selected grounds. So I think that's pretty much where we stand on those two issues. I don't know. Is there anything else that you have for us, Your Honors? Thank you, Mr. LaMarcha. Mr. Schmidt has a little rebuttal time, a little more than a minute and a half. I want to address two points that Mr. Dilcher made. The first is that the claims are irrelevant and problems to be solved, and KSR was very clear. What matters is the objective reach of the claim. If the claim extends to what is obvious, it is unvalid under Section 103. That's on 419 of 550 U.S. Clearly, the claim is what determines what the nature of the problem is. It has to because that's what the patentee is claiming, and that is what is under consideration as to whether or not it is obvious or not. In terms of examples of intentional informing, in the record is a video that SSW used to demonstrate the technology and like the examples in the patent of the technology that is being claimed, water is intentionally poured. So to Your Honors' question, first question, does anyone ever intentionally pour liquid on the refrigerator shelves? To simulate a spill, yes. Simulate a spill, but because it simulates a spill, it's identical to what's going on in Angros. The other point that I want to address that Mr. Dilcher made is that the Board found that even if Angros is analogous art, the argument that the Board made was totally circular. They said that it was obvious even if Angros was analogous art, but then said that you wouldn't combine the references because Angros is not analogous art. That was a circular reference. As to the procedural point, the point was raised because we did not want Mr. Dilcher in the district court to assert that we had not raised it on appeal to this court and waived the argument. We preserved the argument. We do not believe it would be an advisory opinion under Pacific Gas and the Duke Power case. The discussion here is clear that this is an important issue which is determined, all the facts are determined. There's nothing that will change in the district court. Thank you very much. Thank you, Mr. Schmidt. We'll take the case on revising.